1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EDWARD BALTAZAR, et al.,**<br><br>            **Plaintiffs,**<br><br>      **v.**<br><br>**MCKESSON CORPORATION, et al.,**<br><br>            **Defendants.** | **1:12-cv-1917-LJO-SKO**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO TRANSFER OR SEVER (Doc. 54)** |

## I.  INTRODUCTION

Defendants Xanodyne Pharmaceuticals, Inc., Mylan, Inc., and Mylan Pharmaceuticals, Inc. (collectively, "Defendants"), move under 28 U.S.C. § 1404(a) ("§ 1404(a)") to transfer this case to the United States District Court for the Eastern District of Kentucky.[1] Doc. 58. The Court took the matter under submission on the papers pursuant to Local Rule 230(g). *See* Doc. 61. For the following reasons, the Court GRANTS Defendants' motion and TRANSFERS this case to the Eastern District of Kentucky.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This is one of three cases in this District (and one of many more throughout the nation) concerning allegations that prescription pain medications containing propoxyphene cause various injuries. Plaintiffs originally filed this case in California state court and Defendants removed it to this Court under the "mass action" provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Doc. 1. The Ninth Circuit ultimately concluded removal on that ground was appropriate and permissible. *See Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218 (9th Cir. 2014) (en banc).

---

[1] In the alternative, Defendants move to sever from this case a number of Plaintiffs and claims. Because the Court grants Defendants' motion to transfer, Defendants' motion to sever is DENIED AS MOOT.

1

1    This case became part of the multi-district litigation ("MDL") established in the Eastern District

2    of Kentucky for the numerous[2] claims across the country concerning propoxyphene-related injuries. *See*

3    *In re Darvocet, Darvon & Propoyxphene Prods. Liab. Litig*, No. 2:11-cv-2226 (E.D. Ky.) ("*In re*

4    *Darvocet*"). Because the proceedings of the MDL "essentially are complete," the Judicial Panel on

5    Multidistrict Litigation ("JPML") recently remanded the case back to this Court. Doc. 44 at 1.

6    Defendants now argue this case should be transferred back to the Eastern District of Kentucky

7    because transfer will promote efficiency, serve the interests of justice, and will be more convenient for

8    the parties and witnesses than this Court. Doc. 58 at 2. Defendants point out that two California district

9    courts recently transferred virtually identical cases to the Eastern District of Kentucky. *See id.* at 10

10    (citing *Romo v. McKesson Corp.*, No. 12-2036 PSG (Ex), 2015 WL 3622620, at *1 (C.D. Cal. June 9,

11    2015); *Keene v. McKesson Corp.*, No. 12-cv-5924-JST, 2015 WL 9257949 (N.D. Cal. Dec. 17, 2015)).

12    Plaintiffs dispute Defendants' contention that this case should be transferred. *See* Doc. 59.

13    Plaintiffs also claim as a threshold matter that transfer is expressly prohibited under § 1332(d)(11)(C)(i)

14    of CAFA, *id.* at 9,which provides that any action removed under CAFA's mass action provision "shall

15    not thereafter be transferred to any other court pursuant to [28 U.S.C.] section 1407 [("§ 1407")], or the

16    rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to

17    section 1407."

18    **III.STANDARD OF DECISION**

19    The Court "has discretion to adjudicate motions for transfer [under § 1404(a)] according to an

20    individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising,*

21    *Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation and quotations omitted). "For the convenience of parties

22    and witnesses, in the interest of justice, a district court may transfer any civil action to any other district

23    where it might have been brought." § 1404(a). The Ninth Circuit has outlined ten additional factors

---

24
25   [2] *See, e.g.*, *Romo*, 2015 WL 3622620, at *1 ("This is one of twenty-six cases pending before this Court regarding personal injuries relating to . . . propoxyphene"); *see also Keene v. McKesson Corp.*, No. 12-cv-5924-JST, 2015 WL 9257949, at *1 (N.D. Cal. Dec. 17, 2015) (noting seven related actions in the district concerning propoxyphene).

1  courts may consider in deciding a § 1404(a) transfer motion:

2      (1) the location where the relevant agreements were negotiated and executed, (2) the state that is
       most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective
3      parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the
       chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability
4      of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of
       access to sources of proof . . . [(9)] the presence of a forum selection clause . . . [and (10)] the
5      relevant public policy of the forum state, if any.

6  *Id.* at 498-99 (footnote omitted). The moving party bears the burden of establishing that a case should be

7  transferred. *Id.* at 498.

8                                        **IV. ANALYSIS**

9      Defendants stress that *Romo*, 2015 WL 3622620, and *Keene*, 2015 WL 9257949, are entirely on-

10  point and urge the Court to follow their lead. *See* Doc. 58 at 10. Notably, Plaintiffs do not argue

11  otherwise; their only argument concerning these cases is that Judge Gutierrez wrongly decided in *Romo*

12  that CAFA does not bar a § 1404(a) transfer. *See* Doc. 59 at 11. The Court has thoroughly reviewed

13  *Romo*, *Keene*, and the record in this case, and agrees with Defendants that *Romo* and *Keene* are entirely

14  applicable here. Further, the Court agrees with their reasoning, which rejected largely the same

15  arguments Plaintiffs put forth in their opposition to Defendants' motion. The Court therefore follows the

16  analysis of *Romo* and *Keene* here.

17      **A.  CAFA Does Not Bar a § 1404(a) Transfer.**

18      As both Judges Tigar and Gutierrez noted, by its plain language, § 1332(d)(11)(C)(i) of CAFA

19  applies only to § 1407 transfers. *See Romo*, 2015 WL 3622620, at *2-3; *Keene*, 2015 WL 9257949, at

20  *2-3. Section 1407, in turn, applies only to MDL transfers ordered by the JPML. Simply put,

21  § 1332(d)(11)(C)(i) has no bearing on a district court's ability to transfer a case under § 1404(a).

22      **B.  Transfer Under § 1404 Is Appropriate.**

23          **a.  This Case Could Have Been Brought in the Eastern District of Kentucky.**

24      Under § 1404(a), a case may be transferred only to a district court "where it might have been

25  brought." Plaintiffs do not dispute that this case could have been brought in the Eastern District of

                                              3

1  Kentucky because Defendant Xanodyne Pharmaceuticals, Inc., maintains its principal place of business

2  within that District.

3  **b. The Interests of Justice Strongly Support Transfer.**

4  The thrust of Defendants' argument in support of transfer is that the Eastern District of Kentucky

5  (specifically, Judge Danny Reeves[3]) has become familiar with the propoxyphene litigation through its

6  presiding over the years-long proceedings in *In re Darvocet* and its ongoing involvement in other

7  numerous cases that are substantially similar (or virtually identical) to this case, such as *Romo* and

8  *Keene*. *See* Doc. 58 at 14.

9  Plaintiffs do not and cannot dispute that Judge Reeves has been intimately involved with

10  propoxyphene litigation for years and, as a result, is undoubtedly far more familiar with the issues this

11  case presents than is this Court. Plaintiffs also do not and cannot dispute that Judge Reeves has

12  developed numerous case management procedures and protocols for these cases and has made numerous

13  pertinent rulings. As Judge Gutierrez observed, Judge Reeves "has become familiar with the issues at

14  stake in this litigation and would, consequently, resolve them more efficiently." *Romo*, 2015 WL

15  3622620, at *4. This is particularly true given that the Eastern District of Kentucky has a per-judge

16  weighted caseload of 283, whereas this Court has a per-judge weighted caseload of 930.[4]

17  The Court agrees with Judge Tigar that "[c]ombining the various propoxyphene cases in a single

18  district would avoid inefficient duplication of efforts in judicial proceedings as well as the danger of

19  inconsistent results." *Keene*, 2015 WL 9257949, at *4. "To permit a situation in which two cases

20  involving precisely the same issues are simultaneously pending in different District Courts leads to the

21  wastefulness of time, energy and money that [§] 1404(a) was designed to prevent." *Cont'l Grain Co. v.*

22  _____

23  [3] Defendants correctly observe that, if transferred to the Eastern District of Kentucky, this case would be assigned to Judge Reeves pursuant to that court's Local Rules. *See Keene*, 2015 WL 9257949, at *3 n.3.

24  [4] *See* Administrative Office of the United States Courts, *Table, Combined Civil and Criminal Federal Court Management*

25  *Statistics (June 30, 2015), available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3 (last visited Apr. 19, 2016).

1    *The FBL-585*, 364 U.S. 19, 26 (1960). Accordingly, the Court finds that the interests of justice strongly

2    favor transfer. *See Romo*, 2015 WL 3622620, at *3 ("Of the over a dozen factors that courts consider

3    [when assessing whether the interests of justice favor transfer], only one could arguably weigh in favor

4    of the Central District of California—Plaintiffs' choice of forum.").

5              **c. The Eastern District of Kentucky Is a More Convenient Forum.**

6              The final requirement for transfer under § 1404(a) is that the transferee court is more convenient

7    for the witnesses and parties than the transferor court. Although Plaintiffs are correct that Defendants do

8    not provide much specific information or evidence concerning potential witnesses, there are at least

9    three reasons why the Eastern District of Kentucky is a more convenient forum than this Court.

10             First, when transferring *In re Darvocet* to that forum, the JPML noted:

11        Because potential plaintiffs and putative class members will reside in every corner of the country
          and defendants are located in several states, the location of the currently filed cases is not a
12        particularly significant factor in our decision.

13   *In re Darvocet*, 780 F. Supp. 2d 1379, 1381-82 (J.P.M.L. 2011). That the JPML established the Eastern

14   District of Kentucky was a convenient forum for the MDL strongly suggests it remains a convenient

15   forum for this case because, as Plaintiffs note, a "large number" of Plaintiffs are "located in the central

16   and eastern regions on the United States." Doc. 59 at 18. Although the Eastern District of Kentucky may

17   not be ideal for all parties, it appears more convenient than California for many of them. The same can

18   be said of Defendants because only one of nineteen Defendants (McKesson Corporation) is California-

19   based.

20             Second, Judge Tigar found—and Plaintiffs do not now dispute—that "Xanodyne is the most

21   significant Defendant" in this litigation and "much of the testimony and evidence will likely be related

22   to it." *Keene*, 2015 WL 9257949, at *5. Conversely, Plaintiffs do not dispute Defendants' assertion that

23   McKesson Corporation—the only California defendant—is a "tangentially related" distributor and

24   relatively insignificant Defendant. Therefore, more "[r]elevant documents and witnesses likely are

25

1   located within the Eastern District of Kentucky at defendant Xanodyne's Newport[, Kentucky]

2   headquarters" than in California. *In re Darvocet*, 780 F. Supp. 2d at 1382.

3          Third, it appears that the substantially similar (or virtually identical) propoxyphene-related

4   claims of over 1,000 plaintiffs from across the country are currently pending in the Eastern District of

5   Kentucky.[5] Plaintiffs do not "suggest any inconvenience that would be caused by transfer, or that could

6   offset eliminating the inconvenience of requiring key witnesses to travel to both Kentucky and

7   California rather than a single forum for all of the propoxyphene cases." *Keene*, 2015 WL 9257949, at

8   *5; *see also Puri v. Hearthside Food Solutions, LLC*, No. 11-cv-8675-JFW (SSx), 2011 WL 6257182, at

9   *3 (C.D. Cal. 2011) ("[L]itigation of related claims in the same tribunal is strongly favored because it

10  facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s]

11  duplicitous litigation and inconsistent results.") (internal quotations omitted). The Court therefore finds

12  transferring this case to the Eastern District of Kentucky would be more convenient for the parties and

13  witnesses.

14                          **V.  <u>CONCLUSION AND ORDER</u>**

15         For the foregoing reasons, the Court GRANTS Defendants' motion to transfer this case to the

16  Eastern District of Kentucky. Defendants' motion to sever is DENIED AS MOOT.

17  IT IS SO ORDERED.

18      Dated:   **April 24, 2016**              **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24  _____

25  [5] For instance, according to Defendants, *Romo* and *Keene* involve the claims of approximately 1,300 Plaintiffs. *See* Doc. 58 at 7 n.2. In addition, the Court is transferring to the Eastern District of Kentucky this case and two other propoxyphene-related cases, which involve the claims of dozens of plaintiffs.